Jonnie Lou Smith, et al. [1] v. Commissioner. Smith v. Commissioner
Docket Nos. 45853-56855.
United States Tax Court
T.C. Memo 1955-183; 1955 Tax Ct. Memo LEXIS 155; 14 T.C.M. (CCH) 706; T.C.M. (RIA) 55183; June 30, 1955
*155 1. The Commissioner's statutory notices asserting transferee liability against petitioners were mailed more than four years after the filing of the alleged transferor's tax returns. A stipulation was filed at the hearing admitting that there were due from the alleged transferor deficiencies and fraud penalties arising out of the filing of those returns. Held: The stipulation constituted an admission by petitioners of the alleged transferor's deficiencies and fraud. Consequently, assertion of transferee liability against petitioners is not barred by the 4-year period of limitations provided for in sections 275(a) and 311(b)(1), I.R.C. of 1939, but is governed by the unlimited period of limitation, in section 276(a), applicable to fraud cases. 2. In the Fall of 1948 the alleged transferor, V. Hugo Smith (Hugo), offered petitioner Hugh Alexander Smith (Hugh) a tract of farmland in Madison County, Georgia, if Hugh would give up his plans to play professional baseball, return to school, and attempt to develop the tract. Hugh performed those conditions by 1950, when Hugo was still solvent. Hugo purported to orally give the tract to Hugh about Christmas 1948, and the tract was returned for *156 property tax purposes (and such taxes were paid) in Hugh's name since 1949. Hugo did not give Hugh a deed to the property until October 29, 1951, on which date Hugo was insolvent. Held: Under Georgia law Hugh acquired valid equitable title to the tract no later than 1950, at which time Hugo was still solvent. Therefore, even though Hugh did not receive a deed to the tract until October 29, 1951 (when Hugo was insolvent), he is not liable as transferee for Hugo's deficiencies and penalties by reason of the transfer to himofo that tract. 3. In 1945, Hugo bought a house and lot into which his son, Victor, and Victor's family, moved. Victor died in 1949. On October 29, 1951, Hugo who was then insolvent, conveyed the house and lot to his wife, Jonnie Lou Smith (Jonnie Lou), in trust for Victor's two minor children. The fair market value of the house and lot was then $5,500. No consideration was given Hugo for the conveyance. Held: Jonnie Lou is liable, as trustee-transferee, for Hugo's deficiencies and penalties to the extent of $5,500, the fair market value of the house and lot conveyed to her in trust on October 29, 1951. 4. In 1952, two checks were drawn on a bank account and the $3,000 *157 derived therefrom was credited to Jonnie Lou's trading account with a brokerage firm. The bank account was in Hugo's and Hugh's names but Hugo had sole authority to draw checks thereon. Analysis of the facts indicate that the funds in the account, upon which the checks totaling $3,000 were drawn, were funds belonging to and deposited by Hugo. Hugo was insolvent when the checks were drawn and Jonnie Lou gave no consideration therefor. Held: Jonnie Lou is liable as transferee for Hugo's deficiencies and penalties to the extent of $3,000. James W. Arnold, Esq., for the petitioners. George W. Calvert, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner determined that, for the tax years 1942 through 1946, V. Hugo Smith was liable for $34,016.66 in income and victory tax deficiencies and for $17,002.63 in additions thereto for fraud. He further determined that petitioners herein were liable as transferees for those deficiencies and fraud penalties to the following extent: Docket
Transferee
No.
Petitioner
Liability
45853
Jonnie Lou Smith
$3,000.00
45854
Jonnie Lou Smith, Trustee
Vickie Ann and Bobby
Jean Smith
5,500.00 * *158 45855
Hugh Alexander Smith
6,279.63
Petitioners do not contest the liability of their alleged transferor, V. Hugo Smith. However, they contend that assessments of transferee liability against them are barred by the statute of limitations. They also contest their transferee liability on the merits. Findings of Fact Some of the facts were stipulated and are found as so stipulated. The stipulation itself, and its accompanying exhibits, are incorporated herein by reference. V. Hugo Smith, hereinafter sometimes referred to as Hugo, is the husband of petitioner Jonnie Lou Smith, hereinafter sometimes referred to as Jonnie Lou, and the father of petitioner Hugh Alexander Smith, John Winfred Smith and Victor Hiram Smith, hereinafter sometimes referred to, respectively as Hugh, John and Victor. Victor died in August 1949. He was survived by his wife and by his two minor children, Vickie Ann Smith and Bobby Jean Smith. The petitioners reside in Carlton, Georgia. Hugo filed original and amended tax returns for each of the years 1942 through 1946 with the collector of internal revenue for the district of Georgia. All of the *159 original returns for those years were filed more than four years prior to the date respondent mailed the deficiency notices asserting transferee liability against each of the petitioners in this case. The parties herein stipulated that there are income tax deficiencies and fraud penalties due from Hugo for the years 1942 through 1946 in the total amounts of $34,016.66 and $17,002.63, respectively; that Hugo, on November 15, 1951, filed a Form 870 with respondent consenting to the assessment and collection of those deficiencies and penalties; and that they were duly assessed against Hugo and are unpaid except for $8,030.23 which was paid on December 13, 1951 and an additional $700 which was paid during 1952. The unpaid balance of Hugo's deficiencies and penalties is $42,289.06. Hugo has been insolvent since and including October 29, 1951. In 1948, Hugh who was then 19 years old and in high school, aspired to be a professional baseball player. He spent the summer months playing baseball in Florida and, in the Fall of the year, told Hugo that he intended to leave school and devote his time to baseball playing. Hugo then stated that he would give Hugh a 194-acre tract of farmland in *160 Madison County, Georgia, if Hugh, would give up his plan to play professional baseball, remain in high school and endeavor to develop the tract of land. Hugh agreed and returned to school. About Christmas 1948, Hugo purported to give the aforementioned tract to Hugh. No deed was then executed nor had the prior understanding between Hugo and Hugh ever been reduced to writing. Hugo was solvent in 1948, 1949 and 1950. Hugh not only finished high school in 1950 but went on to college. He remained there until July 16, 1951, at which time, since he was due to be drafted shortly anyway, he enlisted in the U.S. Army. His army service terminated just prior to the hearing of this case in 1954. For the year 1949 and all subsequent years the aforementioned tract of land was returned in Hugh's name for local property tax purposes and such taxes were paid in Hugh's name. Hugh did some repair work on the house located on the tract. The tract itself was farmed in cotton, on a share crop basis, with Hugo managing it for Hugh in the latter's absence at college and in the service. Hugh was to get one-fourth of the profits therefrom but his returns for 1949 through 1952 show no income from that source. *161 On October 29, 1951, Hugo executed a formal deed of the tract to Hugh. On that date the fair market value of the tract was $3,880. Excerpts from the deed follow: "For that whereas, in 1949 the undersigned did, for and in consideration of the love and affection which he bore to his youngest son, Hugh Alexander Smith, give, deliver and place in possession the said Hugh Alexander Smith, the following described lands towit: * * *
"Said above lands having been given to and placed in the possession of the grantee herein and taxes having been returned and paid in his name, as aforesaid since 1949 and he having received the issues and profits therefrom, but no deed having been made, this deed is made to carry out that aforesaid agreement. "To have and to hold the said described lands together with all rights, members and appurtenances thereof, to the same being, belonging or in anywise appertaining to the only proper use, benefit and behoof of Hugh Alexander Smith, the said party his heirs and assigns forever in fee simple. * * *" Respondent determined that Hugh was liable as transferee for Hugo's deficiencies and penalties to the extent of $6,279.63. Respondent stated in his deficiency notice *162 to Hugh: "Inasmuch as the value of assets transferred to you amounts to $6,279.63, your liability as transferee is limited to that amount." Respondent now claims only $3,880 transferee liability against Hugh, which was the fair market value of the tract of land on October 29, 1951. In 1945, Hugo paid $3,500 for the deed to a house and lot in Madison County, Georgia. Hugo's son, Victor, and Victor's family moved into the house immediately after its purchase and used it as their residence. Hugo did not give Victor a deed to the property in 1945 or at any time prior to the latter's death on August 20, 1949. Victor worked for Hugo in Hugo's store; Victor had no proprietary interest in the store. Hugo, Jonnie Lou, Victor, Hugh and John all had trading accounts with Courts & Co., a securities and commodities broker, and traded regularly on the securities and commodities exchanges. Hugo was the "mastermind" of the family's accounts. Funds were often transferred from one to the other of the family accounts with no formal records being kept by the family members of any obligations arising between them as a result of the transfers. During the period April 14 through September 3, 1947, six transfers *163 of funds, totaling $11,631.82, were made from Hugo's trading account to Victor's trading account with Courts & Co. It does not appear that any transfers were made from Victor's to Hugo's account during or subsequent to that period nor is there any evidence of consideration given by Victor for those transfers. On February 27, 1948, Courts & Co. issued a $500 check to Victor, debiting his account to that extent, and on March 24, 1948, Victor's account was closed and a final check for $2,690 was issued to him. Those two checks, totaling $3,190, were given to Hugo and it is claimed that they represent payments by Victor to Hugo for money borrowed from Hugo to buy the aforementioned house and lot in 1945. On October 29, 1951, more than two years following the date of Victor's death (August 20, 1949), Hugo executed the following deed of the house and lot: "FOR THAT WHEREAS: The undersigned grantor herein, had during the life of my eldest son, Victor Hiram Smith and before his death in 1949, sold to him the property hereinafter described, and, Whereas, said Victor Hiram Smith had made substantial payments on said property but died unexpectedly before full payment had been made thereon and *164 before any deed or other written agreements had been perfected between us, now therefore, the premises considered; I, Victor Hugo Smith, for and in consideration of the love and affection, which I have for the Cestui Que Trust hereinafter named, the undersigned, Victor Hugo Smith, does hereby give, grant and convey unto Mrs. Jonnie Lou Smith in trust for the minor children hereafter named of my son Victor Hiram Smith, Vickie Ann Smith and Bobby Jean Smith now aged 9 and respectively, the following described property to-wit: * * *
"To have and to hold said property subject to the rights and privileges and powers hereafter granted forever in fee simple with full warranty of title. The aforesaid Jonnie Lou Smith is hereby appointed trustee for said minor children and is empowered to take over said property and control the same for the benefit of said minor children without making any bond for so doing, but is not permitted to encumber said property for any reason whatsoever until said children are of legal age, but is empowered to maintain said property as a home for said children, and in the event of the death of said trustee or becomes incapacitated before said children reach their majority, *165 upon application of their legal guardian to the Superior Court of said county, a successor in trust may be appointed, as is provided for, in Section 108-303 et seq. of the Code of Georgia." Hugo received no consideration for that deed. The fair market value of the house and lot on October 29, 1951, was $5,500. During July and August 1950, Hugo borrowed $31,500 from the Citizens and Southern National Bank. He gave various stocks and bonds as collateral and executed three notes for the loans which notes were cosigned by Hugh. The loans were paid in full by October 18, 1950. Hugh testified that he loaned Hugo about $6,000 toward payments of the notes which money he got from sales of securities. He could not testify as to any details of such securities sales. His 1950 return indicates that only one sale of securities was made by him in that year subsequent to the dates Hugo borrowed the $31,500 and that the cash received from that one sale was not in excess of $912.50. No writing was given evidencing the alleged $6,000 loan nor was interest charged thereon. Hugh did not loan $6,000 to Hugo in 1950. Hugo was the owner of a retail store in Carlton, Georgia, and of the building in which the *166 store was located. There was testimony that Hugo transferred the store, but not the building to Jonnie Lou and Hugh in the Fall of 1951 and was thereafter retained by them as its manager. Hugo did actively manage the store in 1951 and 1952 but no rent was paid to him for use of the store building by the purported new owners. Jonnie Lou filed no separate tax returns for 1951 and 1952 and Hugh's returns for those years contain no report of income or loss from the store. On the other hand, Hugo's returns for 1951 and 1952 list his occupation as "Merchant" and report, as income from a sole proprietorship, the entire profit from the store. In 1952, Hugo paid self-employment tax on the store profit. Hugo was the owner of the store in 1951 and 1952. On November 23, 1951, Hugo opened a checking account at Rowe Banking Company, Comer, Georgia, captioned "Smith & Son - V. Hugo Smith." About February 1, 1952, the caption was changed to "Hugh A. Smith - V. H. Smith." On opening the account Hugo gave instructions that only he was to sign checks on the account. Hugo had for many years maintained another checking account for himself captioned "V. Hugo Smith" but, following November 23, 1951, he made *167 only two deposits (totaling $779.20) in that account and finally closed it on April 22, 1952. The initial deposit in the "Smith & Son - V. Hugo Smith" account on November 23, 1951, was $2,153.46, of which $1,903.46 represented checks from the retail store owned by Hugo. Later deposits also included receipts from the retail store. On January 30, 1952, the account's balance was only $378.01 but was that day increased by a deposit of $5,289.05 which included two checks, totaling $4,936.07, from Courts & Co. to Hugo. On that same day (January 30, 1952) a $2,500 check was drawn on the account payable to Courts & Co. and Courts & Co. credited the proceeds thereof to the trading account maintained with it in Jonnie Lou's name. A second check for $500 was drawn payable to Courts & Co. on February 29, 1952, and was likewise credited by it to Jonnie Lou's trading account. The $2,500 check was signed in Hugh's name by Hugo; the $500 check was, with Hugo's permission, signed in Hugh's name by Jonnie Lou. Jonnie Lou gave no consideration for the proceeds of those two checks, which represented funds belonging to, and given by, Hugo to her. Respondent determined that Jonnie Lou was liable as transferee *168 for Hugo's deficiencies and penalties to the extent of $3,000, representing the proceeds of the aforementioned $2,500 and $500 checks credited to her trading account with Courts & Co. Opinion BLACK, Judge: The respondent has determined that the petitioners herein are liable as transferees for certain unpaid deficiencies and fraud penalties of Hugo, the alleged transferor. Section 311, Internal Revenue Code of 1939. In their brief petitioners first argue that the 3-year statute of limitations in section 275(a) of the 1939 Code, as extended one year for initial transferees by section 311(b)(1), is a bar to assessment of transferee liability against them because Hugo filed all his original returns for 1942 through 1946 (the tax years out of which his deficiencies and penalties arose) more than 4 years prior to the date respondent mailed the notices herein asserting transferee liability. If, however, Hugo's returns were fraudulent there is no statute of limitations bar to assertion of transferee liability against petitioners. Sections 276(a), 311(b)(1) of the 1939 Code; Ruth Halle Rowen, 18 T.C. 874, 880, reversed on other grounds (C.A. 2) 215 Fed. (2d) 641. The burden of proving that *169 respondent erred in determining deficiencies against Hugo is upon petitioners. On the other hand, the burden of proving that Hugo's returns were fraudulent, as well as that petitioners are liable as transferees, is upon respondent. C.A. Reis, 1 T.C. 9; sections 1112, 1119(a) of the 1939 Code. A stipulation between petitioners and respondent was filed in these proceedings to the effect that, for 1942 through 1946, there was due from Hugo deficiencies and fraud penalties in the respective amounts of $34,016.66 and $17,002.63 and that the total unpaid balance of those deficiencies and penalties was $42,289.06. We think that that stipulation constituted an acknowledgment by petitoners of Hugo's fraud, Holly Development Co., 33 B.T.A. 774, reversed on another issue (C.A. 9) 93 Fed. (2d) 146, and there is no reason disclosed by the record why the stipulation should not be honored. Moreover, the opening statement of counsel for petitioners shows that the questions of Hugo's liability for both deficiencies and fraud penalties were not being contested. Accordingly, we hold that petitioners have conceded Hugo's liability for the aforementioned deficiencies and fraud penalties and, therefore, *170 that there is no statute of limitations bar to assessment of transferee liability against them. The only issue to be decided here in respect of each petitioner is whether, and to what extent, respondent proved such petitioner liable as transferee for Hugo's admitted and unpaid deficiencies and fraud penalties. Respondent has abandoned his original determination that Hugh, Hugo's son, was liable as transferee to the extent of $6,279.63. He now maintains only that Hugh is liable to the extent of $3,880, the fair market value of a tract of farmland for which Hugo gave him a deed on October 29, 1951, a date on which Hugo was insolvent. In that deed it was recited that Hugo actually gave Hugh the tract in 1949; that Hugh was placed in possession in 1949 and property taxes have been returned and paid in Hugh's name since then; and that Hugh received the issues and profits of the land since then but that no deed had previously been given him. Hugh argues that Hugo gave him the tract about Christmas 1948, that Hugo was solvent at that time (which we have found to be the fact), and that he (Hugh) gave consideration for the tract. Since the tract of farmland here involved is located in Georgia, *171 the law of that state must be looked to in determining the respective interests therein of Hugh and Hugo. Blair v. Commissioner, 300 U.S. 5; Oscar Deinert, et al., 11 B.T.A. 651; Shaw v. United States, (D.C.W.D. Mich.) 94 Fed. Supp. 245. If Hugh acquired valid equitable title to the land in 1948, 1949 or 1950, see Oscar Deinert, et al., supra; Paulyn E. Tomfohr, 44 B.T.A. 730, he is not liable as transferee since Hugo was solvent during those years. Arlington F. Brown, 24 T.C. 256 (May 24, 1955). In Georgia the conveyance of title to realty must be by deed in writing. Section 29-101, Ga. Code Ann.; Shahan v. Watkins, (Sup. Ct. of Ga.) 21 S.E. (2d) 58. Similarly a contract to convey land must be in writing. Section 20-401(4), Ga. Code Ann. However, such a contract is valid, even though in parol, if there has been full performance on one side which has been accepted by the other in accordance with the contract, section 20-402(2), Ga. Code Ann., or if there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court failed to compel performance, Section 20-402(3), Ga. Code Ann., Gordon v. Spellman, (Sup. Ct. of Ga.) 89 S.E. 749. *172 In this respect section 37-802 of the Georgia Code provides for specific performance of a parol contract as to land if the contract is so far executed by the party seeking relief, at the instance of the other party, that he cannot be restored to his former position if the contract is abandoned; the section then states, inter alia, that full payment accepted by the vendor, or partial payment accompanied with possession, if done with reference to the parol contract, is sufficient "part performance" to justify a decree of specific performance. Such a decree, when given, operates as a deed to convey the land, section 37-1202, Ga. Code Ann., and a party is considered as having "equitable title" to land if he would be entitled to such a decree had he brought a suit for specific performance, see Norwich Union Fire Ins. Soc. v. Sawyer, (Ct. of App. of Ga.) 196 S.E. 223. We must determine, therefore, whether under Georgia law Hugh would have been entitled in either 1948, 1949 or 1950 to a decree of specific performance of the parol contract between himself and Hugo for the conveyance of the tract had he then brought suit therefor. If so, Hugh had equitable title to the tract then and cannot *173 now be held liable as transferee for an alleged gratuitous conveyance of that tract by the October 29, 1951 deed. The facts are that, in the Fall of 1948, Hugo told Hugh that he would give Hugh the tract if Hugh would forego his plans to play professional baseball, remain in school and endeavor to develop the tract. The record clearly establishes the aforementioned as the terms of the parol contract. Gragg v. Hall, (Sup. Ct. of Ga.) 139 S.E. 339. Hugh agreed to the proposition, gave up his plans to play baseball, returned to and finished high school, and then went on to college where he remained until his enlistment in the army in 1951. He did a little repair work on the house which was located on the tract, and further developed the tract by farming it on a share crop basis, with Hugo managing it in his absence. The tract was orally given to him by Hugo about Christmas 1948. For 1949 and all subsequent years the tract was returned, and property taxes thereon were paid, in Hugh's name. Hugh's forbearing to play professional baseball and his return to high school constitute sufficient consideration to support a contract under Georgia law. Section 20-302, Ga. Code Ann.; Borrow County Cotton Mills v. Powell, (Ct. of App. of Ga.) 165 S.E. 882; *174 De Loach v. W. D. Eyre & Co., (Ct. of App. of Ga.) 167 S.E. 123; see also, Robinson v. Hayes' Estate, (N. Y.) 202 N. Y. Supp. 732, affd. 147 N. E. 175; Hosher v. Kautz, (Wash.) 53 P. 51. The contract between Hugo and Hugh was, of course, unilateral but Hugh's complete performance of the conditions that he give up his professional baseball plans, return to school, and attempt to develop the tract rendered obligatory Hugo's promise to convey the tract. Crawford v. Baker, (Sup. Ct. of Ga.) 60 S.E. (2d) 146. Moreover, Hugh's performance was accepted by Hugo in accordance with the parol contract - as evidenced by Hugo's oral transfer of the tract to Hugh about Christmas 1948 and the return of the tract, and payment of property taxes thereon, in Hugh's name. Consequently, such full performance, accepted by Hugo, took the parol contract out of the Georgia statute of frauds, section 20-402(2), Ga. Code Ann., and, we think, would have entitled Hugh to specific performance of the contract, at least by 1950, under section 37-802 of the Georgia Code. Accordingly, we conclude that Hugh had valid equitable title to the tract by 1950, when Hugo was still solvent, that beneficial ownership of *175 the tract was already his when the deed of October 29, 1951 was executed and had been his since at least 1950, and that he is not, therefore, liable as transferee for Hugo's deficiencies and penalties to the extent of the tract's value on October 29, 1951. [2] In 1945, Hugo paid $3,500 for a house and lot into which his son, Victor, and Victor's family, moved. Hugo did not deed the property to Victor. Victor worked in Hugo's store but had no proprietary interest *176 therein. He died on August 20, 1949. On October 29, 1951, Hugo executed a deed of the property to Jonnie Lou, in trust for Victor's two minor children, Vickie Ann and Bobby Jean. The deed recited that Hugo had sold the property to Victor prior to Victor's death; that Victor had made substantial, but not full, payment thereon before his death; that no deed or written agreement had theretofore been executed between Hugo and Victor; and that this deed was being executed in consideration of the aforementioned and of the love and affection of Hugo for Victor's children. Respondent determined that Hugo was insolvent on October 29, 1951, that the value of the house and lot on that date was $5,500 (both of which we have found to be the facts) and that Jonnie Lou, as trustee, was liable for Hugo's unpaid deficiencies and penalties to the extent of that $5,500 since no consideration had been given Hugo for the transfer of the property. Petitioner Jonnie Lou argues that it was orally agreed between Victor and Hugo that Hugo would buy the house in 1945 for $3,500 and resell it to Victor for the same price, that Victor paid Hugo $3,190 of the $3,500 and that at most Jennie Lou is liable as trustee-transferee *177 only to the extent of the difference between $3,190 and $3,500. The alleged payments to Hugo totaling $3,190 were composed of two checks in the amounts of $500 and $2,690 issued to Victor on February 27 and March 24, 1948, respectively, by Courts & Co., a brokerage firm with which there was a trading account in Victor's name. Those checks were given by Victor to Hugo. Victor's account with Courts & Co. was debited with the amount of each check, the latter one being the final check issued to him upon his closing of that account. Hugo, Jonnie Lou, and each of their three children had trading accounts with Courts & Co. which Hugo "masterminded." Funds were transferred from one to the other of the family accounts without any record being kept of the intra-family obligations arising as a result thereof and with no particular consequences resulting from failure to return transferred funds. It is particularly significant that in the 10-to 11-month period prior to the dates Victor gave the two checks to Hugo, Hugo had transferred funds totaling $11,631.82 from his to Victor's trading account. Victor had made no retransfers during that period or given Hugo any consideration for the funds transferred. *178 After careful consideration of the aforementioned we have concluded that the Courts & Co. checks totaling $3,190 which Victor gave to Hugo were not given in payment for the house and lot. At best they constituted retransfers to Hugo of part of the funds transferred from his to Victor's trading account during the preceding 10 to 11 months. An additional fact drawing us to this conclusion is that no previous payments had been made on the house by Victor since its purchase by Hugo in 1945 and it appears unusual that three years later, in 1948, Victor would decide, for no apparent particular reason, to close out his trading account and pay Hugo almost the full $3,500. It follows, therefore, that no consideration was given Hugo for the house and lot. Moreover, if there was in fact an oral agreement made in 1945 for transfer of the property from Hugo to Victor the -eco-d -eveals no other circumstances which would act to remove that agreement from operation of the Georgia statute of frauds, sections 20-401(4), 20-402(3), Ga. Code Ann., and entitle Victor (or his heirs) to specific performance of the agreement prior to Hugo's becoming insolvent, section 37-802, Ga. Code Ann., thereby giving *179 Victor (or his heirs) an equitable title before the advent of such insolvency. Section 37-1202, Ga. Code Ann.; Norwich Union Fire Ins. Co. v. Sawyer, supra; Oscar Deinert, et al., supra. Consequently, we hold that the October 29, 1951 deed to Jonnie Lou, as trustee, constituted the initial transfer by Hugo of legal and equitable title to the property, that no consideration was given for the transfer, that Hugo was insolvent on the date of the transfer, and, therefore, that Jonnie Lou is liable as trustee-transferee for Hugo's unpaid deficiencies and penalties to the extent of $5,500 - the fair market value of the property on the date of transfer. Arlington F. Brown, supra. Respondent determined that Jonnie Lou was individually liable as transferee for Hugo's unpaid deficiencies and penalties to the extent of $3,000, representing the proceeds of a $2,500 and a $500 check which were credited to her trading account with Courts & Co. Jonnie Lou contends that those funds constituted a loan from her son, were drawn, payable to the order of Courts & Co., on a bank account opened by Hugo on November 23, 1951 and captioned "Smith & Son - V. Hugh Smith." The caption was changed on February *180 1, 1952 to "Hugh A. Smith - V. H. Smith." We have found that the funds in that account on which the checks were drawn were in fact Hugo's. Our finding is based on the following matters of record: On its face the bank account was one in which Hugo's interest certainly does not appear to be less than that of a tenant in common. Indeed Hugo had complete control over the funds therein since he gave instructions that only he was to sign checks. Following the opening of the aforementioned account, a different checking account which Hugo had for many years maintained for himself was allowed to become almost wholly inactive and was finally closed on April 22, 1952. Over $1,900 of the intial $2,153.46 deposit in the "Smith & Son - V. Hugo Smith" account represented checks from a retail store owned by Hugo as a sole proprietorship; later deposits to the account also included receipts from the store. On January 30, 1952, the account's balance of $378.01 was increased by a deposit of $5,289.05, over $4,900 of which represented checks to Hugo from Courts & Co. On that same January 30th the $2,500 check here in issue was drawn on the account, signed in Hugh's name by Hugo. The $500 check here in *181 issue was drawn on February 29, 1952, signed, with Hugo's permission, in Hugh's name by Jonnie Lou. It is thus clear to us that Hugo intended to use the initially captioned "Smith & Son - V. Hugo Smith" bank account for deposit of his own funds, that funds belonging to him were in fact deposited therein, and that they were the funds upon which were drawn the $2,500 and $500 checks credited to Jonnie Lou's trading account with Courts & Co. Jonnie Lou argues first that Hugo transferred the ownership of the retail store to her and Hugh in the Fall of 1951 and, consequently, that the funds from that store which were deposited in the "Smith & Son - V. Hugo Smith" bank account did not belong to Hugo. The facts do not sustain that argument. Hugo continued to manage the store following the alleged transfer and reported, on his tax returns for 1951 and 1952, the entire profit from the store as income from a sole proprietorship. In addition, he paid self-employment tax on the store income in 1952. On the other hand, Hugh's returns for 1951 and 1952 reported neither income nor loss from the store (Jonnie Lou filed no separate returns for those years) and Hugo, who owned the building in which *182 the store was operated, was paid no rent therefor by the purported new owners. It is further noted that the only evidence of record bearing upon the transfer was oral testimony and that there was a complete lack of any written evidence pertaining thereto. We have concluded from the above that no transfer of the store actually took place, that Hugo continued to be its owner throughout the period here involved, and that the funds from that source which were deposited in the "Smith & Son - V. Hugo Smith" bank account were Hugo's. Jonnie Lou next argues that the approximate $4,900 in checks to Hugo from Courts & Co., which constituted the major portion of the January 30, 1952 deposit of $5,289.05 in the bank account, was deposited in that account as a partial repayment to Hugh of $6,000 which Hugo previously borrowed from Hugh to pay off certain notes. In July and August 1950, Hugo borrowed $31,500 from a bank, giving three notes therefor, each of which was cosigned by Hugh. The notes were paid in full by October 18, 1950. Hugh testified that he advanced $6,000, at no interest, to enable Hugo to meet those notes. However, the tenor of Hugh's testimony was indefinite and uncertain; he stated *183 that he sold securities to obtain the $6,000 advanced to Hugo, but he could give no details as to such sales. In fact, Hugh's 1950 return indicates that in that year, subsequent to the date of Hugo's bank borrowings, Hugh realized no more than $912.50 from securities sales. When all the evidence is carefully considered we can reach no other conclusion than that Hugh never did advance $6,000 to Hugo. Consequently, the $4,900 contained in the January 30, 1952 deposit to the "Smith & Son - V. Hugo Smith" bank account was money which Hugo deposited to his own use and did not constitute a partial repayment for any advance made him by Hugh. As has previously been stated, therefore, it was against Hugo's funds in the "Smith & Son - V. Hugo Smith" bank account that the $2,500 and $500 checks for Jonnie Lou's benefit were drawn. Those checks, the proceeds of which were credited to Jonnie Lou's trading account with Courts & Co., thus constituted transfers of funds from Hugo to Jonnie Lou. Hugo was insolvent when those transfers were made and Jonnie Lou has given no consideration therefor. Consequently, Jonnie Lou is liable as transferee for Hugo's unpaid deficiencies and penalties to the extent *184 of $3,000. Arlington F. Brown, supra.
Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Jonnie Lou Smith, Trustee for Vickie Ann and Bobby Jean Smith, Transferees, Docket No. 45854; Hugh Alexander Smith, Docket No. 45855.↩
*. The deficiency notice asserted liability of $4,500 but the Commissioner, in an amendment to his answer, raised it to $5,500.
2. Since Hugo was solvent when Hugh obtained equitable title, and there is no evidence of actual intent by Hugo to hinder, delay, or defraud his creditors by enabling Hugh to obtain such equitable title, we need not consider whether the consideration given by Hugh was "valuable" (i.e., convertible into money, or having a value in money, section 20-303, Ga. Code Ann.) as it would have to be for Hugh's equitable title to be valid against creditors either if Hugo was insolvent at the time Hugh acquired such title or if Hugo, although solvent, intended to defraud his creditors. Section 28-201(3), Ga. Code Ann.; Beasley v. Smith, (Sup. Ct. of Ga.) 87 S.E. 293; Commissioner v. Southern Bell Tel. & Tel. Co., 102 Fed. (2d) 397↩ (C.A. 6).