T.C. Memo. 2013-96

UNITED STATES TAX COURT

JOHN E. MCALLISTER, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19412-09.                    Filed April 8, 2013.

John E. McAllister, Jr., pro se.

<u>Mark J. Tober</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent issued a notice of deficiency

determining a $26,696 deficiency in the petitioner's federal income tax and a

$5,339 accuracy-related penalty under section 6662(a) for tax year 2007.  Unless

otherwise indicated, all section references are to the Internal Revenue Code as in

[*2] effect for the 2007 tax year. The respondent is referred to as the IRS; the petitioner is referred to as McAllister.

The issues for decision are:

(1)    Did McAllister receive unreported compensation income of $78,849 during the 2007 tax year, or in the alternative, did McAllister receive $78,849 of unreported cancellation-of-debt income (before application of the insolvency exception of section 108(a)(3))? We hold that McAllister did not receive $78,849 of unreported compensation income. However, we hold that McAllister received $78,849 of unreported cancellation-of-debt income (before application of the insolvency exception of section 108(a)(3)).

(2)    What portion of the $78,849 of unreported cancellation-of-debt income is excludable from McAllister's income because he was insolvent? We hold that $22,641.42 is excludable from McAllister's income.

(3)    Is McAllister liable for an accuracy-related penalty under section-6662(a)? We hold that he is not.

[*3]                          FINDINGS OF FACT

McAllister timely filed a petition with the Tax Court disputing the determinations of the IRS.  At the time of filing, McAllister resided in North Carolina.

In 2005 McAllister worked as an employee for Suncoast Roofers Supply. During this time he borrowed money from Suncoast Roofers Supply as follows:

| Date | Amount |
|------|--------|
| Feb. 21, 2005 | $11,480.00 |
| Oct. 21, 2005 | 29,869.07 |
| Nov. 16, 2005 | 2,500.00 |
| Dec. 2, 2005 | 9,000.00 |
| Dec. 19, 2005 | 26,000.00 |
| Total | 78,849.07 |

Suncoast Roofers and McAllister executed a promissory note for each of the advances.  Pursuant to the loan arrangements, McAllister was to repay the loans from bonuses earned through incentive plans as part of his compensation.  Suncoast Roofers agreed to pay McAllister the amounts of any tax liabilities from the earning of bonuses.  The loans had no repayment date and required no interest payments. McAllister made no repayments of the loans.

**[*4]** In 2007 Suncoast Roofers ran into financial difficulties. By August 2007 McAllister was no longer its employee. Suncoast Roofers was sold to Suncoast Acquisition Corp. McAllister timely filed Form 1040, U.S. Individual Income Tax Return, for 2007 in March 2008. In May 2008 Suncoast Acquisition Corp. issued McAllister a Form 1099-MISC, Miscellaneous Income, showing the amount of the loans and characterizing the amount as nonemployee compensation paid in 2007. On his Form 1040 McAllister did not report as income the $78,849.07 that was later reported to him on the Form 1099-MISC. On May 11, 2009, the IRS issued the notice of deficiency.

## OPINION

1.  Did McAllister receive unreported compensation income of $78,849 during the 2007 tax year, or in the alternative, did McAllister receive $78,849 of unreported cancellation-of-debt income (before application of the insolvency exception of section 108(a)(1)(B))?

The taxpayer bears the burden of proving by a preponderance of the evidence that the IRS's determinations in the notice of deficiency are incorrect. Tax Ct. R. Pract. & Proc. 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Bronstein v. Commissioner, 138 T.C. 382, 385 (2012). Under section 7491(a), if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax and meets other requirements, the

[*5] burden of proof rests on the IRS as to that factual issue. Our conclusions here are based on the preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

Gross income includes all income from whatever source derived. Sec. 61(a). Gross income includes compensation for services. Sec. 61(a)(1). Gross income also generally includes income from the cancellation of debt. Sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931).

It is undisputed that Suncoast Roofers loaned McAllister $78,849.07 in 2005. The IRS contends that in 2007 Suncoast Roofers awarded McAllister a bonus of $78,849.07 that he used to repay the $78,849.07 in loans. Thus, the IRS contends, McAllister must include $78,849.07 in income as compensation. McAllister takes the position that he did not receive a constructive bonus in 2007 and that either (1) the loans were not canceled because he still intends to pay them back, or (2) alternatively, even if the loans were canceled in 2007 he was insolvent.

McAllister credibly testified that Suncoast Roofers did not inform him of a bonus (constructive or otherwise) of $78,849.07 in 2007. By August 2007 McAllister was no longer an employee of Suncoast Roofers. Suncoast Roofers

**[\*6]** experienced financial difficulties during 2007 leading to its eventual sale. Therefore, we reject the IRS's contention that McAllister earned a $78,849.07 constructive bonus in 2007.

However, we find the loans totaling $78,849.07 were canceled in 2007. Suncoast Roofers was acquired by another company, Suncoast Acquisition Corp., which never contacted McAllister about paying back the loans. The Form 1099-MISC, we find, memorialized Suncoast Acquisition Corp.'s decision to forgive the McAllister debt that it acquired from Suncoast Roofers. The Form 1099-MISC improperly[1] classified the amount of the forgiven debt as nonemployee compensation income of $78,849.07. We find this was a bookkeeping error rather than a reflection that McAllister had been awarded a bonus. We find that by the end of 2007 it was clear that McAllister would not have to repay the debt. Therefore, McAllister had $78,849.07 in cancellation-of-debt income in 2007. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987) ("The moment it becomes clear that a debt will never have to be paid, such debt must be viewed as having been discharged.").

---

[1]The proper form to issue when canceling debt is a Form 1099-C, Cancellation of Debt.

**[*7]** 2.         <u>What portion of the $78,849 of unreported cancellation-of-debt income is excludable from McAllister's income because he was insolvent?</u>

Section 108(a)(1)(B) excludes discharge of indebtedness income from gross income if the discharge occurs when the taxpayer is insolvent.  The amount of income excluded under section 108(a)(1)(B) cannot exceed the amount by which the taxpayer is insolvent.  Sec. 108(a)(3).  The amount by which the taxpayer is insolvent is defined as the excess of the taxpayer's liabilities over the fair market value of the taxpayer's assets.  Sec. 108(d)(3).  Whether a taxpayer is insolvent and by what amount is "determined on the basis of the taxpayer's assets and liabilities immediately before the discharge."  <u>Id.</u>

McAllister claims that his assets and liabilities at the end of 2007 were as follows:

| <u>Assets</u> | <u>Amount</u> |
|---|---|
| Bank accounts | $2,667.07 |
| Savings account | 2,000.66 |
| Real estate FL | 130,000.00 |
| Real estate NC | 175,000.00 |
| Automobile | 22,000.00 |
| Total | 331,667.73 |

| [*8] Liabilities | Amount |
|---|---|
| Home Depot account | 4,879.00 |
| Mortgages | 363,068.15 |
| State taxes | 1,485.00 |
| Automobile loan | 19,897.00 |
| Total | 389,329.15 |
| Amount of insolvency | 57,661.42 |

Insolvency is a question of fact. See Toledano v. Commissioner, 362 F.2d 243, 245 (5th Cir. 1966), aff'g T.C. Memo. 1963-200; Smith v. Commissioner, 249 F.2d 218, 220, 221 (5th Cir. 1957), aff'g T.C. Memo. 1955-183; Estate of Phillips v. Commissioner, 246 F.2d 209, 213-214 (5th Cir. 1957), rev'g T.C. Memo. 1955-139; 14A Jacob Mertens, Law of Federal Income Taxation, sec. 54.5 (2013). McAllister has the burden of proving his claim that he was insolvent. See Tax Ct. R. Pract. & Proc. 142(a). At trial McAllister provided credible testimony that his assets and liabilities were what he claimed they were, except that there is legitimate doubt about the exact values he placed on the North Carolina and Florida real estate. We consider the appropriate value of each of these properties in turn.

North Carolina

McAllister testified that he purchased the property in North Carolina for $191,020 in December 2006 but that by the end of 2007 its value had declined to $175,000. He based the $175,000 estimate on a sale of a property in the same neighborhood in January 2007. The IRS contends that the value of the North

**[*9]** Carolina property was $201,650, which was the property's assessed value for local property tax purposes in January 2008.

We find that the value of McAllister's property was $191,020 at the end of 2007. This is the price at which McAllister had bought the property a year before. We do not rely on the January 2007 sale of another property. The sale took place only a month after the purchase of McAllister's property, and we doubt that the property was comparable to McAllister's property. We do not rely on the assessed value of McAllister's property for local property tax purposes. "[A] value placed upon property for the purpose of local taxation, unsupported by other evidence, cannot be accepted as determinative of fair market value for Federal income tax purposes in the absence of evidence of the method used in arriving at that valuation." Pierce v. Commissioner, 61 T.C. 424, 431 n.6 (1974). The IRS did not provide any information on the method the local government used to assess the property. Thus, we cannot rely on this valuation.

Florida

McAllister credibly testified that he purchased the property in Florida in March 2005 for $149,000. He testified that its value by the end of 2007 was $130,000 based on its assessed value for local property tax purposes. He did not

**[*10]** explain the method by which the assessed value was determined. We find

that the value of the property at the end of 2007 was $149,000.

Conclusion

In summary, we find that McAllister's liabilities at the end of 2007 exceeded

his assets by $22,641.42.

| Assets | Amount |
|---|---|
| Bank accounts | $2,667.07 |
| Savings account | 2,000.66 |
| Real estate FL | 149,000.00 |
| Real estate NC | 191,020.00 |
| Automobile | 22,000.00 |
| Total | 366,687.73 |
| | |
| Liabilities | |
| Home Depot account | 4,879.00 |
| Mortgages | 363,068.15 |
| State taxes | 1,485.00 |
| Automobile loan | 19,897.00 |
| Total | 389,329.15 |
| Amount of insolvency | 22,641.42 |

The amount of income excluded under the insolvency exception of section

108(a)(1)(B) is limited to the amount of the insolvency. Sec. 108(a)(3). Of the

$78,849.07 of cancellation-of-debt income, $22,641.42 is excludable from

McAllister's income. The remaining amount--$56,207.65--is included in income.

**[*11]** 3.    Is McAllister liable for the accuracy-related penalty pursuant to section 6662(a)?

Section 6662(a) and (b)(2) impose a penalty equal to 20% of the part of an underpayment attributable to a substantial understatement of income tax. Generally, an "understatement" is the excess of tax required to be shown on the return over the tax shown on the return. Sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

The IRS has the burden of producing evidence that a taxpayer is liable for penalties. Sec. 7491(c). The IRS satisfies its burden by producing "sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the IRS satisfies its burden of production, the taxpayer has the burden of persuading the fact finder that he or she is not liable for additions or penalties. Id. at 446-447.

In this case, the IRS has satisfied its burden of production if the Rule 155 computations show a substantial understatement of income tax.

McAllister did not report cancellation-of-indebtedness income, resulting in an underpayment of tax. The section 6662 penalty is not imposed on an

[*12] underpayment if the taxpayer (i) had a reasonable cause for and (ii) acted in good faith regarding the underpayment.  See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  The taxpayer bears the burdens of both production and proof as to whether this exception applies.  See Higbee v. Commissioner, 116 T.C. at 446 (stating that the IRS "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions").  On the basis of our review of the record, McAllister had reasonable cause for, and acted in good faith with respect to the underpayment.  Accordingly, he is not liable for the section 6662(a) accuracy-related penalty.

Decision will be entered

under Rule 155.