T.C. Memo. 2016-125

UNITED STATES TAX COURT

KEITH A. NEWMAN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2416-14.                    Filed June 28, 2016.

<u>James R. Monroe</u>, for petitioner.

<u>Anne M. Craig</u>, <u>Sean P. Deneault</u>, and <u>Lauren B. Epstein</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent issued a notice of deficiency determining a

$4,012 deficiency in petitioner's 2011 Federal income tax.  After concessions,[1] the

---

[1]  For 2011 petitioner conceded receiving $598 in wages from the U.S. Postal Service and $622 in wages from Youth Advocate programs and that he was not entitled to an education credit of $2,075.

**[*2]** remaining issues for decision are: (1) whether petitioner received $7,875 in cancellation of debt income (COD income) during 2011 and (2) whether petitioner is entitled to exclude any COD income received during 2011 under the insolvency exception provided in section 108(a)(1)(B).[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. At the time the petition was filed, petitioner resided in Florida.

In July 2008 petitioner opened a checking account at Bank of America. Between July and August petitioner made deposits totaling $8,857.95 into the bank account. Of the total deposits, $8,500 was attributable to a single check drawn from another bank account petitioner maintained at Wells Fargo. Shortly after making the initial deposits petitioner withdrew $8,000 in cash from the Bank of America account. However, the initial $8,500 check petitioner deposited into the Bank of America account did not clear and was later returned to Wells Fargo. This caused the Bank of America account to be overdrawn. Petitioner did not

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** deposit funds in the Bank of America account to correct the negative balance. Consequently, Bank of America closed the account in August 2008.

In 2011 petitioner owned various items of personal property including furniture, clothes, and electronics of marginal value; he owned two watches valued at $500; and he owned a car valued at $35,000. Petitioner also had several liabilities in 2011--he owed $35,000 on a car loan, and he owed $15,000 in student loans.

In December 2011 Bank of America issued to petitioner a Form 1099-C, Cancellation of Debt, for 2011 reporting COD income of $7,875. Petitioner did not report the $7,875 as income on his 2011 Federal income tax return. On November 12, 2013, the IRS issued petitioner the notice of deficiency determining that the $7,875 of COD income constituted unreported gross income. Petitioner timely filed a petition with this Court for redetermination.

OPINION

I.    Cancellation of Debt Income

The first issue to resolve is whether petitioner received $7,875 of COD income for 2011.

Gross income generally includes income from the discharge of indebtedness. Sec. 61(a)(12). The rationale of this principle is that the

**[*4]** cancellation of indebtedness provides the debtor with an economic benefit that is equivalent to income. See United States v. Kirby Lumber Co., 284 U.S. 1 (1931); Friedman v. Commissioner, 216 F.3d 537, 545 (6th Cir. 2000), aff'g T.C. Memo. 1998-196; see also sec. 108.

The year for which a taxpayer realizes COD income is a question of fact to be determined on the basis of the evidence. See Policy Holders Agency, Inc. v. Commissioner, 41 T.C. 44, 47 (1963); Callan Court Co. v. Commissioner, T.C. Memo. 1965-261. A debt is deemed discharged the moment it becomes clear that the debt will never be repaid. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration." Id. (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927)); see also sec. 1.6050P-1(b)(2)(i), (iv), Income Tax Regs. (providing an exclusive list of eight "identifiable events" under which debt is discharged for information reporting purposes, including the expiration of a 36-month nonpayment testing period).

A bookkeeping entry by a creditor does not result in COD income. See Kleber v. Commissioner, T.C. Memo. 2011-233, slip op. at 7 (citing Cozzi v. Commissioner, 88 T.C. at 445). The issuance of a Form 1099-C is an identifiable event, but it is not dispositive of an intent to cancel indebtedness. Owens v.

[*5] <u>Commissioner</u>, T.C. Memo. 2002-253, <u>aff'd in part, rev'd in part, and remanded</u>, 67 F. App'x 253 (5th Cir. 2003).  There is a rebuttable presumption that an identifiable event occurred in a calendar year if, during a testing period (generally 36 months) ending at the close of the year, the creditor has received no payments from the debtor.  Sec. 1.6050P-1(b)(2)(iv), Income Tax Regs.

The bank records reflect that all account activity leading to the overdrawn account occurred within a one-month period in 2008.  Bank of America did not receive any payments from petitioner after August 2008.  Therefore, the 36-month nonpayment testing period under section 1.6050P-1(b)(2)(iv), Income Tax Regs., began in August 2008 and ended at the close of 2011.  Because Bank of America did not receive any payments during this testing period, a rebuttable presumption has arisen that the debt was discharged in 2011.

Petitioner has not rebutted the presumption that the debt was discharged in 2011.  Therefore, because he has not rebutted the presumption of discharge of indebtedness, and because the Form 1099-C was issued in 2011, we find that petitioner had COD income of $7,875 for 2011.

[*6] II.     <u>Insolvency Exception</u>

Now that we have found that petitioner had COD income for 2011, we must determine whether the COD income is excludable from his gross income under the insolvency exception provided in section 108(a)(1)(B).

Section 108(a)(1)(B) excludes COD income from gross income if the discharge of indebtedness occurs when the taxpayer is insolvent. The amount by which the taxpayer is insolvent is defined as the excess of the taxpayer's liabilities over the fair market value of the taxpayer's assets. Sec. 108(d)(3). Whether a taxpayer is insolvent and by what amount is "determined on the basis of the taxpayer's assets and liabilities immediately before the discharge." <u>Id.</u> The amount of income excluded under section 108(a)(1)(B) cannot exceed the amount by which the taxpayer is insolvent. Sec. 108(a)(3).

As stated earlier, petitioner owned assets in 2011 valued at a total of $35,500. Petitioner was also liable for debts totaling $50,000. Therefore, after netting assets and liabilities, petitioner's claimed amount of insolvency is $14,500.

Insolvency is a question of fact. <u>See</u> <u>Toledano v. Commissioner</u>, 362 F.2d 243, 245 (5th Cir. 1966), <u>aff'g</u> T.C. Memo. 1963-200; <u>Smith v. Commissioner</u>, 249 F.2d 218, 220, 221 (5th Cir. 1957), <u>aff'g</u> T.C. Memo. 1955-183; <u>Estate of Phillips v. Commissioner</u>, 246 F.2d 209, 213-214 (5th Cir. 1957), <u>rev'g</u> T.C.

**[*7]** Memo. 1955-139. Petitioner has the burden of proving his claim that he was insolvent. See Rule 142(a). At trial petitioner provided credible testimony that his assets and liabilities were what he claimed they were. Therefore, we accept petitioner's claimed amount of insolvency and find that his liabilities at the end of 2011 exceeded his assets by $14,500. We also find that section 108(a)(1)(B) allows petitioner to exclude all $7,875 of COD income from his 2011 gross income because the amount of his insolvency in 2011 exceeded his COD income for 2011.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.